resentations of existing material facts that were false and fraudulent, and also that the contract was substantially performed on plaintiff's part. The trial judge properly compelled the defendant to elect either to stand on her alleged counterclaim, and to affirm the contract, or to abandon the counterclaim as such, and to stand on the alleged facts as a defense. Defendant could not have the benefits of a valid contract without bearing its burdens. She could not be permitted to affirm in part and rescind in part. To such a state of facts the case cited by appellant's counsel (*Bruce* v. *Burr*, 67 N. Y. 237) has no application.

The offered evidence of preparations made by the defendant for the picnic was properly excluded. The only theory on which such evidence might be admissible is that it goes to show defendant's belief in the representations made. But no representation is available for that purpose unless it is a representation as to an existing material fact. It was made to appear that the representations relied upon for rendering the excluded evidence admissible related to mere expectations, and not to existing material facts. If the defendant wished to rely on the representations of expectations which she claimed plaintiff's committee made to her, she should have exacted from the committee a guaranty of the number to be present, or a guaranty of profits. The questions at issue were fully and fairly submitted to the jury under a charge which carefully guarded every right which the defendant had, and no exception appears anywhere which calls for reversal. The judgment should be affirmed, with costs.

---

ROOME *et al.* v. JENNINGS *et al.*

(*Superior Court of New York City, General Term.*   July 5, 1892.)

ATTACHMENT—INJURIES TO PERSONAL PROPERTY—BREACH OF TRUST.

Plaintiffs, tea merchants, employed defendants, tea brokers, to sell a quantity of teas for them; and defendants reported a sale, which plaintiffs accepted, but afterwards repudiated on the ground that defendants were themselves the purchasers of the tea. The market having fallen in the mean while, plaintiffs sustained a loss of $7,500. The tea remained all the time in plaintiffs' possession. *Held*, that the loss sustained was not an "injury to personal property in consequence of fraud," within Code Civil Proc. § 635, entitling plaintiffs to an attachment in such case.

Appeal from special term.

Action by William P. Roome and others against Frederick C. Jennings and William Butterfield. Plaintiffs obtained an attachment on the ground of injury to personal property, alleging in their affidavit that they had employed defendants as brokers to sell for them several thousand half chests of tea; that defendants reported a sale to plaintiffs, and falsely stated that they, defendants, were not interested therein except as brokers; and that plaintiffs, on discovering the fraud, rescinded the contract of sale, and had not been since able to sell the tea, except at a greatly reduced price, in consequence of which they sustained damage to the extent of $7,500. From an order vacating the attachment, plaintiffs appeal. Affirmed.

The opinion of McADAM, J., at special term, was as follows: "The attachment was obtained on the ground of 'an injury to personal property in consequence of fraud,' (Code, § 635, subd. 3,) a term which is defined to mean an act whereby 'the estate of another is lessened, other than a personal injury or breach of contract,' (Code, § 3343, subd. 10.) The defendants never obtained possession of the plaintiffs' property, as in *Whitney* v. *Hirsch*, 39 Hun, 325, did no actual injury to it, but made a contract to purchase the property, which contract the plaintiffs rescinded because they discovered that the defendants, who assumed to act as brokers, were in fact acting as principals. The market fell, and the plaintiffs insist that they lost in consequence $7,500. The defendants may be liable for breach of duty, and the difference

in value may be the measure of recovery, but it does not follow that they injured the plaintiffs' property within the legal meaning of that term. See *Tracy* v. *Leland*, 2 Sandf. 730, 3 Code, R. 47; *Railway Co.* v. *Carpentier*, 13 How. Pr. 222. The defendants did nothing to lessen the estate of the plaintiffs, which remains as before; and it was not affected, except as to value, —a thing controlled entirely by the fluctuations of the market, which at times rises and falls. The word 'injury,' as used in the Code, is not so elastic as to yield to such a changeable construction, but upon something which takes away the property, deprives the owner of its possession, or inflicts some lasting injury upon it by direct means. The motion to vacate the attachment must be granted, with $10 costs."

Argued before FREEDMAN, DUGRO, and GILDERSLEEVE, JJ.

*F. A. Thompson*, for appellants. *Putney & Bishop*, (*James L. Bishop*, of counsel,) for respondents.

PER CURIAM. The order appealed from is affirmed, with $10 costs and disbursements, on the opinion of the court below.

---

### FOLEY *v.* WESTERN N. Y. & P. R. Co.

(*Superior Court of Buffalo, General Term.* July 8, 1892.)

DISCHARGE OF SERVANT—RE-EMPLOYMENT UNDER ASSUMED NAME—COMPENSATION.

The fact that a brakeman, who had been discharged, and who would have had no chance for re-employment by the company had his identity been known, obtained re-employment under an assumed name, does not justify the company, after having had the benefit of his services, and in the absence of any damage, in refusing to pay him for the said services on discovery of the deception. WHITE, J., dissenting.

Appeal from trial term.

Suit by Frank Foley against the Western New York & Pennsylvania Railroad Company to recover upon a *quantum meruit* for services as a brakeman. Judgment for plaintiff. Defendant appeals. Affirmed.

Argued before TITUS, C. J., and HATCH and WHITE, JJ.

*L. P. Hancock*, for appellant. *O. O. Cottle*, for respondent.

TITUS, C. J. It appears that at one time the plaintiff was in the employ of the defendant, and that for some reason he was discharged; that he again sought employment under the name of Frank McGuire, and was engaged in the capacity of a brakeman on a freight train. After he had worked 36 days, it became known to the defendant that he was in fact the Frank Foley whom it had previously discharged from its employ, and he was thereupon immediately discharged, apparently for the same reason as for his first discharge. The defendant refused to pay him for his services while employed as Frank McGuire. He performed his duties under his last employment satisfactorily to the defendant, being prompt and efficient in his work. No complaint is made against him, or reason given for his discharge, except the fact that he was once in the employ of the railroad and discharged from its service. No claim is made by the defendant for damages against him while in its employ, either as Frank Foley or Frank McGuire, but it seeks to be relieved from the payment of his wages on the ground that he falsely represented himself to be Frank McGuire, and fraudulently induced the defendant to enter into a contract with him, when, if his identity had been known, he would not have been employed. No claim is made that the defendant suffered any damage by reason of the false representations, but, having been imposed upon by him, it claims not to be liable to pay for the services performed. I think that the judgment of the municipal court must be affirmed. It is a well-settled principle of law that, where no damage has been suffered by reason of fraud,